# United States Court of Appeals
### For the Eighth Circuit

_____

No. 20-3192
_____

Barbara Chauvin; Mark Chauvin

*Plaintiffs - Appellants*

v.

Bayer Healthcare Pharmaceuticals, Inc.

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: September 20, 2021
Filed: September 27, 2021
[Unpublished]
_____

Before SMITH, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.
_____

PER CURIAM.

Barbara and Mark Chauvin sued Bayer Healthcare Pharmaceuticals, Inc., in federal court in the Eastern District of Louisiana for injuries they say stem from a Bayer drug containing fluoroquinolone. Their case was transferred to the District of Minnesota to be part of the multidistrict litigation (MDL) taking place there involving

the drug. The district court[1] eventually dismissed the Chauvins' claims for their failure to comply with a pretrial order, and they appeal. We affirm.

To help ensure that the MDL proceeded smoothly, the district court designated certain attorneys as lead counsel for the plaintiffs in the MDL and charged them with "making strategic, tactical, and procedural decisions on behalf of the Plaintiffs' counsel and pro se Plaintiffs." Lead counsel retained four experts that produced reports on general causation and liability, though lead counsel eventually agreed with Bayer and others on a master settlement. Plaintiffs were not obligated to participate in this master settlement and were free to litigate their claims individually. The Chauvins chose not to settle.

The district court entered an order setting forth the pretrial obligations of those, like the Chauvins, who opted not to settle. The obligation most relevant for our purposes was that they had to provide expert reports "on general causation concerning the alleged injury/injuries" within 120 days after deciding not to participate in the master settlement. The order warned that failure to do so would result in dismissal of their complaint with prejudice.

More than 120 days after the deadline for plaintiffs to join the master settlement, Bayer moved for an order directing the Chauvins to show cause why they had not complied with the pretrial order. The Chauvins had apparently re-served copies of the reports that leadership counsel had obtained several months earlier from the experts they had retained. Bayer asked the Chauvins to confirm whether they had indeed retained the experts and whether they could produce them for testimony. At a hearing on the matter, the Chauvins maintained that they should not have to retain experts until their case was returned to the Eastern District of Louisiana. The district

---

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota.

court disagreed and explained that the case would not be transferred to that court until it was "essentially ready for trial." The court gave the Chauvins an additional forty days to comply with its order.

That period elapsed with no progress. The Chauvins contended that it was the responsibility of lead counsel to retain the experts and defend them from any challenge Bayer might assert. The district court rejected that contention and explained that, when the Chauvins chose not to participate in the master settlement, it became their responsibility to litigate their own claims and to comply with the relevant pretrial order. And since that order required the Chauvins to serve expert reports, it "necessarily entail[ed] the responsibility of retaining the experts who prepared the reports" to ensure they would appear at trial. The court nonetheless gave the Chauvins an additional ninety days to comply.

Ninety days elapsed without much progress. Bayer again moved for an order to show cause, and the court gave the Chauvins an additional twenty-one days either to cure the deficiency or to show cause why the court should not dismiss their case. At the end of this period, the Chauvins replied that they had "produced everything required of them" by the pretrial order and attached letters they had sent to the four experts. Those letters advised the experts to preserve the work they had done as experts for lead counsel and that the Chauvins would inform them if their testimony was necessary.

The district court deemed these letters insufficient "because they do not show that the experts have agreed to be retained or that the experts would be available for pre-trial motions" as the order required. Because they had "neither retained the required experts nor assured the Court they could produce experts for deposition at pre-trial motion hearings," despite several opportunities, the court dismissed their claims with prejudice.

We have observed that the administration of a case in an MDL is different from the administration of cases on a routine docket. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007). MDL courts face unique difficulties in coordinating proceedings, all while seeking to further Congress's aim in making these proceedings efficient. *See id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014). As a result, MDL courts are "given greater discretion to create and enforce deadlines in order to administrate the litigation effectively," which "includes the power to dismiss cases where litigants do not follow the court's orders." *See Freeman*, 764 F.3d at 810.

The Chauvins do not seriously contend on appeal that they satisfied the requirements set forth in the court's pretrial order. In fact, they admit that "it was certainly within the district court's discretion to find that the letters sent to the expert witnesses were insufficient to comply with the intention of the" court's pretrial order. They instead maintain that the court abused its discretion in dismissing their case because they did not willfully disobey the court.

Perhaps the Chauvins did not willfully disobey the court, but we still think that the district court did not abuse its discretion. The district court gave the Chauvins several opportunities and extensions, and yet they continued to insist they had no duty to retain and make available certain experts. All told, the district court spent about a year giving the Chauvins extensions, warning them about continued noncompliance, and rejecting various arguments they offered to justify their noncompliance. Though the Chauvins may not have been "contumacious," they did appear to show "blatant disregard for the deadlines and procedure imposed by the court," which we have said provides ample support for a district court's decision to dismiss a complaint. *See Guidant Corp.*, 496 F.3d at 867. We see no abuse of discretion here.

Affirmed.

_____